MARC E. JOHNSON, Judge.
 

 | aThe Defendant, Michael B. Woods, appeals from his habitual offender proceeding, in which the trial judge found him to be fourth felony offender and sentenced him to life imprisonment. We affirm.
 

 The Defendant was initially convicted of attempted simple burglary of an inhabited dwelling, possession of hydrocodone, and possession of alprazolam. Following his convictions, the Defendant was sentenced to six years imprisonment at hard labor on the attempted simple burglary charge, five years imprisonment at hard labor on the possession of hydrocodone charge, and five years imprisonment at hard labor on the possession of alprazolam charge, all to be served consecutively. The convictions were affirmed by this Court in
 
 State v. Woods,
 
 08-718 (La.App. 5 Cir. 2/10/09), 4 So.3d 248, rehearing denied.
 
 [1]
 

 13After the Defendant’s appeal was filed and prior to this Court’s opinion, the State filed a habitual offender bill alleging the Defendant to be a fourth felony offender. The Defendant denied the allegations and filed a response alleging that he was not advised of his constitutional rights at the
 
 *397
 
 time he entered the pleas to the predicate offenses, was not advised of the possibility of the future applicability of the habitual offender statute, and was not properly Boykinized at the hearings on the predicate offenses.
 

 After a hearing, the trial judge found the Defendant to be a fourth felony offender. He vacated the Defendant’s previous sentence for his attempted simple burglary of an inhabited dwelling conviction, and sentenced the Defendant to life without benefit of probation or suspension of sentence. The Defendant objected to the sentence as excessive. This appeal followed.
 
 [2]
 

 Appellate counsel filed one assignment of error. The Defendant filed nineteen pro se assignments of error.
 

 A. Appellate counsel’s assignment of error:
 

 In counseled brief, the Defendant asserts that the State did not meet its burden of proving all the predicate offenses listed in the habitual offender bill. Specifically, he contends that he was not fully and thoroughly informed of his
 
 Boykin
 

 [3]
 

 rights, the maximum or minimum sentences, or that his guilty pleas could result in the State pursuing sentencing enhancement against him in the future. The Defendant also claims that the record fails to show whether counsel represented him, or whether he knowingly and voluntarily waived his right to counsel.
 
 [4]
 
 Third, he argues that the State failed to produce sufficient information regarding his prior |4convictions, and thus, the trial court committed manifest error in reaching his decision without conducting an independent and thorough review to determine if the Defendant’s predicate convictions were constitutional.
 

 In his pro se brief, the Defendant also asserts that the State failed to prove his identity in two of the State’s exhibits, 3a and 3b, because those exhibits lack dates and the names of the persons connected to the fingerprints.
 
 [5]
 

 The State responds that it met its initial burden of proving the existence of each of the Defendant’s prior conviction's and that the Defendant was represented by counsel at each guilty plea, thus satisfying its initial burden of proof. The burden then shifted to the Defendant to produce any affirmative evidence showing an infringement of his rights or procedural irregularity in the taking of his pleas, and that the Defendant failed to produce such evidence. The State contends that, because the Defendant did not meet his burden, it was not required to prove the constitutionality of the guilty pleas.
 

 In addition, the State argues that
 
 Boykin v. Alabama
 
 does not require a defendant to be advised of the sentencing range, or that a guilty plea could result in the State pursuing sentencing enhancement against him in the future for the entry of a presumptively valid guilty plea.
 

 The Defendant first argues that State’s exhibits 2, 3a, 3b, 4, 5, 6 and 7 cannot be linked to the bill of information because the item numbers are not on the
 
 *398
 
 exhibited fingerprints.
 
 [6]
 
 He asserts that State’s exhibits 3a, 3b, and 4 are not certified by the person claiming to have taken the fingerprints, and that State’s exhibits 5 and 6 occurred before his convictions.
 
 [7]
 
 He also claims that State’s |Bexhibit 2 is an enhanced charge and, therefore, it cannot be used to enhance his sentence here.
 

 During the hearing, the Defendant did not object to the admission of the State’s exhibits on these grounds. In order to preserve the right to appellate review of an alleged trial court error, the party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. La.C.Cr.P. art. 841;
 
 State v. McClain,
 
 04-98, p. 14 (La.App. 5 Cir. 6/29/04), 877 So.2d 1135, 1144, writ denied, 04-1929 (La.12/10/04), 888 So.2d 835. A new basis for an objection may not be raised for the first time on appeal.
 
 Id.
 
 These alleged errors have not been preserved for review, and are not properly before this Court on appeal.
 

 Burden of Proof
 

 In order to prove that a defendant is a habitual offender, the State must establish by competent evidence the defendant’s prior felony convictions and that defendant is the same person who was convicted of the prior felonies.
 
 State v. Chaney,
 
 423 So.2d 1092 (La.1982);
 
 State v. Jones,
 
 08-466, p. 7 (La.App. 5 Cir. 10/28/08), 998 So.2d 178, 182-83;
 
 [8]
 

 State v. Guillard,
 
 04-899, p. 13 (La.App. 5 Cir. 4/26/05), 902 So.2d 1061, 1072,
 
 writ denied,
 
 05-1381 (La.1/13/06), 920 So.2d 233. In addition, when a defendant’s habitual offender status is based on guilty pleas in the predicate convictions, the State has the burden of proving the defendant was represented by counsel when the guilty pleas were taken.
 
 State v. Shelton,
 
 621 So.2d 769, 779 (La.1993);
 
 Jones,
 
 08-466 at 7, 998 So.2d at 183.
 

 If the State meets its burden of proof, then the burden shifts to the defendant to produce some affirmative evidence of an infringement of his rights or a procedural irregularity in the taking of the plea.
 
 Shelton,
 
 621 So.2d at 779;
 
 Jones,
 
 08-466 at 7, 998 So.2d at 183. If the defendant meets the burden, then it shifts back to the State to prove the constitutionality of the plea by producing a perfect transcript, which shows that the defendant’s waiver of his
 
 Boykin
 
 rights was voluntary, informed, and express.
 
 Shelton,
 
 621 So.2d at 779-80;
 
 Jones,
 
 08-466 at 7, 998 So.2d at 183. If the State produces anything less than a perfect transcript, such as a guilty plea form, minute entry, or imperfect transcript, the trial judge must weigh the evidence to determine whether the defendant’s prior plea was both knowing and voluntary.
 
 Shelton,
 
 621 So.2d at 780;
 
 Jones,
 
 08-466 at 8, 998 So.2d at 183.
 

 The State is not required to use a specific type of evidence in order to carry its burden of proof pursuant to the Habitual Offender Law, La. R.S. 15:529.1.
 
 Payton,
 
 00-2899 at 2, 810 So.2d at 1132;
 
 State v. Lindsey,
 
 99-3302, p. 7 (La.10/17/00), 770 So.2d 339, 344 n. 3,
 
 cert. denied, 532
 
 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001);
 
 Jones,
 
 08-466 at 7, 998 So.2d at 183. Rather, any competent evidence may be used prove a defendant’s
 
 *399
 
 prior convictions.
 
 Jones,
 
 08-466 at 7, 998 So.2d at 188. The State’s burden of proof may be met by various means including the testimony of witnesses to prior crimes, expert testimony matching fingerprints of the defendant with those in the record of prior convictions, or photographs contained in a duly authenticated record.
 
 State v. Mays,
 
 05-2555, p. 2 (La.5/26/06), 929 So.2d 1231, 1232;
 
 Jones,
 
 08-166 at 7, 998 So.2d at 183.
 

 In this case, the habitual offender bill of information alleges that the Defendant is a fourth felony offender. The State sought to enhance the Defendant’s sentence on his underlying conviction for attempted simple burglary (count one) by producing evidence of seven prior convictions in which the Defendant plead guilty. The seven predicate convictions were obtained in the 24th Judicial District Court for Jefferson Parish, as follows:
 

 |71) Possession of marijuana (second offense), a violation of La. R.S. 40:966(C), on February 24, 2005, district court number
 
 05-231,
 
 Division “J”;
 

 2) Theft valued at over $500, a violation of La. R.S. 14:67, on April 18, 1996, district court number
 
 95-6154,
 
 Division “B”;
 

 3) Simple burglary, a violation of La. R.S. 14:62, on April 18, 1996, district court number
 
 95-3113,
 
 Division “B”;
 

 4) Felon in possession of a firearm, a violation of La. R.S. 14:95.1, on July 22, 1993, district court number
 
 93-3600,
 
 Division “A”;
 

 5) Distribution of marijuana, a violation of La. R.S. 40:966(A), on March 30, 1992, district court number
 
 91-4415,
 
 Division “S”;
 

 6) Simple burglary of an inhabited dwelling, a violation of La. R.S. 14:62.2, on February 27,1991, district court number
 
 90-4500,
 
 Division “H”;
 

 7)Simple burglary of an inhabited dwelling, a violation of La. R.S. 14:62.2, on June 26, 1989, district court number
 
 89-835,
 
 Division “H”.
 

 At the habitual offender hearing, Deputy Chad Pittfield, an expert in fingerprint comparisons with the Sheriffs Office Crime Laboratory Latent Print Section, identified State’s exhibit 1 as the fingerprint card that he obtained from the Defendant earlier that day. Pittfield compared the Defendant’s fingerprints with the fingerprints on the certified copies of the bills of information in the predicate offenses. Pittfield identified the Defendant’s fingerprints in all but one of the predicate cases, case number
 
 95-3113
 
 (State’s Exhibit 3b).
 

 Later in the hearing, when the State’s exhibits were being entered into evidence, the Defendant objected to admission of State’s exhibits 2, 3a, 3b, 4, 5, 6 and 7. He argued that he had not been properly Boykinized because he did not place his initials next to his rights, was not advised of the minimum sentence, and was not advised that his sentence could later be enhanced as a result of his plea. The Defendant asserted that the errors were not harmless, as indicated by the fact that Jefferson Parish took precautionary measures in upgrading the forms to cure the errors. The State responded that the Defendant had been advised of his
 
 Boylcin
 
 rights and, therefore, his plea was constitutional. Defense counsel also objected to State’s exhibit 3b (case no. 95-3113), because the fingerprint expert could not identify the prints on the exhibit as belonging to the Defendant.
 

 IsThe State responded that the fingerprints in State’s exhibit 3b were part of a self-authenticating document and were taken on the same day as those in State’s exhibit 3a. The State claimed that the evidence showed that the Defendant is the
 
 *400
 
 same person who pled guilty in both cases, The State noted that the same
 
 Boykin
 
 form was used in both cases.
 

 The trial judge admitted all the State’s exhibits, finding no deficiencies in the certified exhibits presented by the State. He then found the State proved its case beyond a reasonable doubt, and concluded that the Defendant was a fourth felony offender. The judge noted that the State had proven that the Defendant was more than a fourth felony offender. The trial judge vacated the Defendant’s previous sentence on the attempted simple burglary conviction, and sentenced the Defendant to life imprisonment without benefit of probation or suspension of sentence. The Defendant objected to the sentence as excessive.
 

 Based on the following, we find that the State proved the Defendant’s identity in all of the predicate convictions, the existence of the predicate guilty pleas, and that the Defendant was represented by counsel, thus satisfying the State’s initial burden under
 
 Shelton.
 

 In
 
 Shelton,
 
 the Louisiana Supreme Court noted that it had previously held that the State met its burden of proving a prior guilty plea in a habitual offender hearing where it submitted a very general minute entry and a well-executed plea of guilty form.
 
 [9]
 
 There, the State submitted a minute entry that stated the trial judge advised the defendant of his rights, and a “Waiver of Constitutional Rights/Plea of Guilty” form. The form listed the right to trial by jury, the privilege against self-incrimination,9 and the right to confront accusers. The defendant initialed indicating a waiver of those rights. The defendant, his attorney, and the trial judge signed the form. This evidence was sufficient to meet the State’s burden of showing that the guilty plea was informed, free and voluntary, and made with an articulated waiver of the three
 
 Boykin
 
 rights.
 

 In the present case, Pittfield testified that he compared the fingerprints in case number
 
 05-231,
 
 State’s exhibit 2, with the fingerprints of the Defendant that he had made earlier that day and found they were the same. State’s exhibit 2 contained two true copies of:
 

 1) The bill of information charging the Defendant with possession of marijuana (second offense) and bearing the district court case number and a fingerprint sheet bearing the Defendant’s name dated February 24, 2005;
 

 2) The February 24, 2005 commitment/minute entry bearing the Defendant’s name, date of birth (May 23, 1968), age (36 years), the district court case number, the name of defense counsel, and the division, indicating that the Defendant was advised of his
 
 Boykin
 
 rights, pled guilty to possession of marijuana (second offense), and was sentenced to 2 years and 6 months;
 

 3) The “Plea of Guilty & Waiver of Rights” form dated February 24, 2005, bearing the Defendant’s signa
 
 *401
 
 ture, defense counsel’s signature, the district court case number, and the division, indicating that he was advised of his
 
 Boykin
 
 rights, pled guilty to possession of marijuana (second offense), and was sentenced to 30 months.
 

 Therefore, the Defendant’s fingerprints in case
 
 05-231
 
 were linked to the bill of information, a February 24, 2005 commitment/minute entry, and the “Plea of Guilty & Waiver of Rights” form by the district court case number and the charged offense.
 

 Pittfield compared the fingerprints in case number
 
 95-6154,
 
 State’s exhibit 3a, with the fingerprints of the Defendant and found they were the same. State’s exhibit 3a contained true copies of:
 

 1)The bill of information filed on November 6, 1995, charging the Defendant with theft of jewelry valued at over $500 and bearing the Defendant’s name, the district court case number, and division;
 

 1 in2) A fingerprint sheet bearing the November 6, 1995 filing date of the bill of information;
 

 3) The “Defendant’s Acknowledgment of Constitutional Rights on Entry of a Plea of Guilty” form dated April 18, 1996, bearing the Defendant’s signature, the defense counsel’s signature, the district court’s case number, and the division that indicated the Defendant was advised of his
 
 Boykin
 
 rights, pled guilty to theft over $500, and was informed that he would receive a six-year sentence;
 

 4) The April 18, 1996 commitment/minute entry indicating the Defendant was advised of his rights, pled guilty to theft over $500, and received a sentence of six years
 
 to be served concurrent with case 95-3113 and consecutive to case number 93-3600.
 
 The April 18, 1996 commitment/minute entry also indicated the Defendant’s date of birth (May 23, 1968), age (26 years), the district court’s case number, the defense counsel’s name, and the division.
 

 Therefore, the fingerprints in case number
 
 95-6154
 
 were linked to the bill of information by the date the bill of information was filed. The other documents, the “Defendant’s Acknowledgment of Constitutional Rights on Entry of a Plea of Guilty” form, and the April 18, 1996 com-mitmenVminute entry, were linked to the bill of information by the district court’s case number and the charged offense.
 

 Pittfield compared the fingerprints in case number
 
 96-3600
 
 (State’s Exhibit 4) with the fingerprints of the Defendant and found they were the same. State’s exhibit 4 contained true copies of:
 

 1) The bill of information filed on July 12, 1995, charging the Defendant with a violation of La. R.S. 14:95.1 and bearing the Defendant’s name, the district court case number, and complaint number (A-06691-93);
 

 2) A fingerprint sheet bearing the Defendant’s name dated July 22, 1993, and stamped with the filing date of the bill of information;
 

 3) “Defendant’s Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty” form dated July 22, 1993, bearing the Defendant’s signature, defense counsel’s signature, the district court’s case number, and the division indicating the Defendant was advised of his
 
 Boykin
 
 rights, pled guilty to violating La. R.S. 14:95.1, and was advised that he would receive a sentence of 3 years and 6 months;
 

 4) A “Hard Labor Plea Sentencing Form” bearing the Defendant’s
 
 *402
 
 name, date of birth (May 28, 1968), age (25 years), defense counsel’s name, the district court’s case number, division, and complaint number (A-06691-93) indicating that the Defendant was advised of his rights, pled guilty to violating La. R.S. 14:95.1, and received a sentence of 3⅜ years.
 

 | nTherefore, the fingerprints in case number
 
 96-3600
 
 were linked to bill of information by the filing date. All the other documents, the “Defendant’s Acknowledgment of Constitutional Rights on Entry of a Plea of Guilty” form and a “Hard Labor Plea Sentencing Form” were linked to the bill of information by the district court’s case number.
 

 Pittfield compared the fingerprints in case number
 
 91-4415
 
 (State’s Exhibit 5) with the Defendant’s fingerprints and found they were the same. State’s exhibit 5 contained true copies of:
 

 1) The bill of information bearing the Defendant’s name, the district court case number, a complaint number (I-9745-90) indicating the Defendant was charged with distribution of marijuana;
 

 2) A fingerprint sheet bearing the Defendant’s name dated March 30,1992, the date of the Defendant’s guilty plea;
 

 3) “Defendant’s Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty” form dated March 30, 1992, bearing the Defendant’s signature, defense counsel’s signature, and district court number indicating the Defendant was advised of his
 
 Boykin
 
 rights, pled guilty, and was advised that he would receive a sentence of five years with two years suspended and two years on active probation;
 

 4)A “Hard Labor Plea Sentencing Form” dated March 30, 1992, bearing the Defendant’s name, date of birth (May 23, 1968), age (24 years), defense counsel’s name, the district court’s case number, the division, and complaint number (1-9745-90) indicating that the Defendant was advised of his rights, pled guilty to distribution of marijuana, and received a sentence of 5 years with two years suspended and active probation for 2 years.
 

 Therefore, the fingerprints in case number
 
 91-4415
 
 were linked to the “Defendant’s Acknowledgment of constitutional Rights on Entry of a Plea of Guilty” form and a “Hard Labor Plea Sentencing Form” by the date of the Defendant’s conviction. The bill of information is linked to the “Defendant’s Acknowledgment of Constitutional Rights on Entry of a Plea of Guilty” form and a “Hard Labor Plea Sentencing Form” by the district court case number.
 

 112Pittfield compared the fingerprints in case number
 
 90-4500
 
 (State’s Exhibit 6) with the Defendant’s fingerprints and found they were the same. State’s exhibit 6 contained true copies of:
 

 1) The bill of information bearing the Defendant’s name and complaint number (1-8627-90) indicating that he was charged with simple burglary;
 

 2) A fingerprint sheet dated on the date of the Defendant’s guilty plea, February 27, 1991, bearing his name, the district court case number, the charged offense, and his address;
 

 3) “Defendant’s Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty” form dated February 27, 1991, bearing the Defendant’s signature, defense counsel’s signature, the district court’s case number, and division in
 
 *403
 
 dicating that the Defendant was advised of his
 
 Boykin
 
 rights, pled guilty, and was informed that he would receive a sentence of three years;
 

 4) A “Hard Labor Plea Sentencing Form” dated February 27, 1991, bearing the Defendant’s name, the name of defense counsel, date of birth (May 23, 1968), age (22 years), the district court’s case number, the division, and the complaint number (I-8627-90) indicating that the Defendant was advised of his rights, pled guilty to simple burglary, and received a sentence of three years.
 

 The fingerprints in case number
 
 90-4500
 
 were linked to the “Hard Labor Plea Sentencing Form” by the district court case number and the charged offense to which the Defendant pled guilty. The “Hard Labor Plea Sentencing Form” is linked to the bill of information by the complaint number and the charged offense to which the Defendant pled guilty. The bill of information is linked to the “Defendant’s Acknowledgment of Constitutional Rights on Entry of a Plea of Guilty” form by the district court’s case number and the charged offense to which the Defendant pled guilty.
 

 Pittfield compared the fingerprints in case number
 
 89-836
 
 (State’s Exhibit 7), with the Defendant’s fingerprints and those were also found to be the same. State’s exhibit 7 contained true copies of:
 

 1) The bill of information charging the Defendant with simple burglary and bearing the Defendant’s name, complaint number (A-7254-89), fingerprints dated on the date of the Defendant’s guilty plea, June 26,1989;
 

 | iS2) “Defendant’s Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty” form dated June 26, 1989, bearing the Defendant’s signature, defense counsel’s signature, the district court’s case number, and the division indicating that the Defendant was advised of his
 
 Boykin
 
 rights, pled guilty to violating La. R.S. 14:62.2, and was advised that he would receive a sentence of one year;
 

 3) A June 26, 1989 minute entry bearing the Defendant’s name, date of birth (May 23, 1968), age (21 years), defense counsel’s name, the district court number, and division indicating that the Defendant was advised of his
 
 Boykin
 
 rights, pled guilty to simple burglary of an inhabited dwelling, and received a sentence of one-year;
 

 4) A “COMMITMENT” bearing the Defendant’s name, the district court number, the division, and item number (A-7254-89) that is identical to the complaint number indicating that the Defendant pled guilty to simple burglary and received a sentence of one year.
 

 Therefore, the fingerprints in case number
 
 89-836
 
 and the bill of information were linked to the “Defendant’s Acknowledgment of Constitutional Rights on Entry of a Plea of Guilty” form and a June 26, 1889 minute entry by the district court’s case number, the date of the guilty plea, and the charged offense. The “COMMITMENT” is linked to the bill of information by the complaint number, the date of the guilty plea, and the charged offense.
 

 Pittfield could not identify the fingerprints in case number
 
 95-3113
 
 (State’s Exhibit 3b), because the quality of the copy was poor and lacked individual characteristics for comparison. Consequently, the Defendant objected to State’s exhibit 3b, arguing that the packet was faulty and deficient.
 

 The State responded to the objection. It argued that the Defendant pled guilty in
 
 *404
 
 cases
 
 95-6154
 
 and
 
 95-3113
 
 on the same date, and that the fingerprints in case number
 
 95-3113
 
 (State’s exhibit, S-3b) were part of a self-authenticating document and that they were taken on the same day as those in case number
 
 95-6154
 
 (State’s exhibit, S-3a). In addition, the State claimed that the evidence showed that the Defendant is the same person who pled guilty in both cases. The State also noticed that the same
 
 Boykin
 
 form was used in both cases. The trial agreed and admitted State’s exhibit 3b.
 

 |¶ ¿State’s exhibit 3b contained true copies of:
 

 1) The bill of information filed on June 9, 1995, charging the Defendant with simple burglary and bearing his name and the district court case number;
 

 2) The fingerprint sheet bearing the Defendant’s name, as well as a co-defendant, Dawn Strecker, with a stamp of the June 9,1995 filing date, a July 27, 1995 stamp, and a notation indicating that there was an arraignment and trial was set for September 18, 1995;
 

 3) The “Defendant’s Acknowledgment of Constitutional Rights on Entry of a Plea of Guilty” form dated April 18, 1996, bearing his signature, defense counsel’s signature, the district court’s case number, and division indicating that the Defendant was advised of his
 
 Boykin
 
 rights, pled guilty to simple burglary, and was advised that he would receive a sentence of six years to be served concurrent with case
 
 95-6154 and consecutive with case 93-3600;
 

 4) An April 18, 1996 commitment /minute entry bearing the Defendant’s name and date of birth (May 23, 1968), age (26 years), defense counsel’s name, the district court’s case number, and the division indicating that the Defendant was advised of his rights, pled guilty to simple burglary, and received a sentence of six years to be served concurrent with case
 
 95-6154 and consecutive with case 93-3600.
 

 In
 
 State v. Darensbourg,
 
 06-572, p. 8 (La.App. 5 Cir. 12/27/06), 948 So.2d 1128, 1134, writ
 
 denied,
 
 07-0317 (La.11/9/07), 967 So.2d 495, we stated that testimony comparing a defendant’s current fingerprints with those found on the defendant’s prior arrest records is sufficient to prove that he was the person convicted of a prior felony.
 

 Furthermore, there is a sufficient linkage where the State has connected the fingerprint card to the arrest register and/or the bill of information by matching police item numbers, Bureau of Identification numbers, social security numbers, addresses, employers, or docket numbers.
 
 State v. Thomas,
 
 06-654, p. 10 (La.App. 5 Cir. 1/16/07), 951 So.2d 372, 379,
 
 writ denied,
 
 07-0464 (La.11/21/07), 967 So.2d 1153.
 

 We find that, although the fingerprint expert could not compare the fingerprints of the Defendant with those in case number
 
 95-3113
 
 (State’s exhibit, 3b) because the quality of the prints was poor, there is a linkage to the Defendant. Both case numbers
 
 95-6154
 
 (Exhibit 3a) and
 
 95-3113
 
 (Exhibit 3b) were executed |1Bon the same day. The waiver of rights form in Exhibit 3a states that the Defendant’s sentence is to run “concurrent w/ 24th JDC No.
 
 95-3113
 
 but consecutive to
 
 93-3600
 
 of 24th JDC.” The commitment/minute entry in State’s Exhibit 3a indicates the same. The waiver of rights form in State’s Exhibit 3b states that the Defendant’s sentence is to run “concurrent w/ 24th JDC No.
 
 95-6154;
 
 consecutive to 24th JDC No.
 
 93-3600.”
 
 [Emphasis added.] The commitment/minute entry in State’s Exhibit 3b indicates
 
 *405
 
 the same. In addition, both eommitment/minute entries dated April 18, 1996 recite the Defendant’s date of birth as May 23, 1968, and his age as 26 years. These facts, along with Pittfield’s identification of the Defendant’s fingerprints in case number
 
 95-6154,
 
 is more than sufficient to prove that the Defendant is the person referred to in the predicate pleas.
 

 Furthermore, we find that the State proved the Defendant’s identity in all of the other predicate convictions, that it submitted documents, including general minute entries and well-executed guilty plea forms, proving the existence of the Defendant’s prior guilty pleas, and that the documents show that the Defendant was represented by counsel in those cases. Thus, the State met its initial burden under
 
 Shelton.
 

 The burden then shifted to the Defendant to produce some affirmative evidence of an infringement of his rights or of a procedural irregularity. The record here shows that the Defendant failed to meet his burden of proof under
 
 Shelton.
 

 In
 
 State v. Neal,
 
 00-41 (La.App. 5 Cir. 5/30/00), 762 So.2d 281, 284, the defendant was found to be a fourth felony offender. In the appeal, the defendant claimed that the trial judge improperly found him to be a habitual offender because the State failed to present sufficient evidence that he waived his
 
 Boykin
 
 rights when he pled guilty in three predicate offenses. The State, however, had introduced minute entries showing that the defendant entered the guilty pleas, was represented |1fiby counsel, was personally advised of his
 
 Boy-kin
 
 rights by the trial judge, and that the defendant waived those rights. The records also contained “Waiver of Constitutional Rights” forms signed by the defendant and his attorney.
 

 The defendant attempted to meet his burden under
 
 Shelton
 
 by testifying that he did not recall being advised of his
 
 Boykin
 
 rights in any of the predicate guilty pleas. This Court agreed with the trial judge that the defendant had not made the requisite showing under
 
 Shelton
 
 merely because the defendant did not remember being advised of his rights when he previously pled guilty.
 
 Neal,
 
 00 — 41 at 6, 762 So.2d at 284-85. Since the defendant did not present any affirmative evidence under
 
 Shelton,
 
 the State was not required to introduce a perfect
 
 Boykin
 
 transcript in connection with the predicate offenses.
 
 Neal,
 
 00-41 at 6-7, 762 So.2d at 285.
 

 In this case, the Defendant attempts to meet his burden of producing some affirmative evidence of an infringement of his rights or of a procedural irregularity in the taking of the guilty plea, by claiming that State’s exhibits 3a, 5, and 7 are incomplete because he did not write his initials by each of the questions.
 

 There has never been a requirement that a defendant initial each line in a plea form.
 
 See, Darensbourg,
 
 06-572, at 11, 948 So.2d at 1136;
 
 State v. Fleming,
 
 04-1218, p. 7 (La.App. 5 Cir. 4/26/05), 902 So.2d 451, 457,
 
 writ denied,
 
 05-1715 (La.2/10/06), 924 So.2d 161. In accordance with
 
 Darensbourg
 
 and
 
 Fleming,
 
 we find that lack of initials on the waiver forms is not affirmative evidence of an infringement on his rights or of a procedural irregularity sufficient to satisfy the Defendant’s burden under
 
 Shelton.
 

 Furthermore, although the Defendant did not initial by his rights on the waiver forms included in State’s exhibits 3a, 4, 5, and 7, we note that he did sign the waiver of rights forms.
 

 The Defendant also argues that he met his burden to produce some affirmative evidence of an infringement of his rights or of a procedural irregularity, 117because he was not informed of his
 
 Boykin
 
 rights,
 
 *406
 
 the maximum or minimum sentences, or that his guilty pleas could result in the State pursing sentencing enhancement against him in the future.
 

 In
 
 State v. Nuccio,
 
 454 So.2d 93 (La. 1984), the Louisiana Supreme Court noted that the scope of
 
 Boykin
 
 had not been expanded to include advising a defendant of any other rights nor the possible consequences of a defendant’s actions, including that the defendant’s conviction might be used as a basis for the filing of a future multiple offender bill.
 

 In
 
 State v. Guzman,
 
 99-1528 (La.5/16/00), 769 So.2d 1158, the Louisiana Supreme Court stated that it had never extended the core
 
 Boykin
 
 constitutional requirements to include advice with respect to sentencing. The Court further noted that the legislature did not intend for La.C.Cr.P. art. 921 to apply to the trial judge’s failure to inform a defendant of the mandatory minimum sentences or the enhanced penalties for subsequent offenses.
 
 [10]
 

 Id.,
 
 99-1528 at 9, 769 So.2d at 1164.
 
 [11]
 

 In
 
 State v. Haywood,
 
 00-1584, p. 13 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 579, this Court stated that advice of a defendant’s sentencing range or the fact that his guilty plea may be used as a basis for filing a future habitual offender bill has never formed a part of the
 
 Boykin
 
 requirements for the entry of a presumptively valid guilty plea. Although recognizing that La.C.Cr.P. art. 556.1 sets forth certain requirements that must be met before the trial court can accept a guilty plea,
 
 [12]
 
 we also noted a harmless error analysis is applied when a defendant challenges a pri- or guilty plea due to a violation of La. C.Cr.P. art. 556.1.
 
 Id.
 
 The |18analysis inquires into whether a defendant’s knowledge and comprehension of the full and correct information would have likely affected the defendant’s willingness to plead guilty.
 
 Haywood,
 
 00-1584 at 13-14, 783 So.2d at 579. Nevertheless, violations of La.C.Cr.P. art. 556.1 that do not rise to the level of
 
 Boykin
 
 violations are subject to harmless error analysis.
 
 State v. Strattman,
 
 08-674, p. 5 (La.App. 5 Cir. 4/28/09), 13 So.3d 1129, 1132.
 

 In light of the above, we find that the constitutional requirements of
 
 Boykin
 
 did not require the trial judge to advise the Defendant of the minimum and maximum sentence, or the possible consequences of the Defendant’s actions, including that his conviction might be used as a basis for the filing of a future habitual offender bill.
 
 [13]
 
 Therefore, the trial judge’s failure to do in the predicate or underlying offense does not affect the validity of the guilty pleas.
 

 Based upon the above, we find that the Defendant failed meet his burden under
 
 Shelton
 
 to produce some affirmative evidence of an infringement of his rights or a procedural irregularity. Thus, the burden of proof never shifted back to the State to prove the constitutionality of the plea by producing a perfect transcript. See
 
 Jones,
 
 
 *407
 
 08-466 at 7, 998 So.2d at 183;
 
 Shelton,
 
 621 So.2d at 779-80. Consequently, we find no merit to this assignment of error.
 

 B. Defendant’s pro se assignments of error:
 

 The Defendant filed nineteen assignments of error. As can be seen by the following discussion, assignments of error one through thirteen, and assignment of error nineteen are not properly before this Court on appeal. We address the merits of assignments of error fourteen through eighteen.
 

 Numbers 1-4—Severance
 

 In pro se assignments one through four, the Defendant claims that the charged offenses in his underlying convictions should have been severed because | i9the charged offenses were not similar or of the same caliber and had no relevance to each other.
 

 Based upon the following, we find that these errors are not properly before this Court.
 

 In
 
 State v. Gassenberger,
 
 02-658 (La. App. 5 Cir. 12/11/02), 836 So.2d 271, the defendant filed a second appeal after re-sentencing claiming that the trial judge erred in denying his motion to disclose the identity of the confidential informant. We declined to address the issue finding that, because the defendant’s convictions were affirmed and the case had been remanded for re-sentencing following the original appeal, the only issues that could be properly raised in the defendant’s second appeal were those regarding his re-sentencing.
 

 In the present case, this Court affirmed the Defendant’s convictions and sentences in his first appeal after finding that the trial court did not abuse its discretion in denying the Defendant’s motion to sever the burglary charge from the possession of hydrocodone and possession of alprazolam charges. We noted that the facts of each offense were simple and uncomplicated, and the evidence for each crime was presented chronologically and separately with each witness testifying as to either the burglary or the drug possession offenses. We further noted that the charged offenses were not complicated in nature. Thus, the jury would have been able to segregate the various charges and offenses. In addition, the record did not indicate that the charged offenses made the jury hostile to the Defendant, nor were any of the charged offenses crimes of violence.
 
 State v. Woods,
 
 08-718 at 10, 4 So.3d at 254.
 

 In light of the above, we decline to address these claims as the severance issue was fully litigated in the Defendant’s appeal on the merits from his convictions.
 

 Number 5—Ineffective counsel
 

 |2nIn this assignment of error, the Defendant claims that his trial counsel was ineffective because counsel “had inadequacies” and lacked the knowledge to try his case. The Defendant contends that the trial judge should have corrected this unfairness and given him an attorney who was prepared and could give him more than nominal representation, in order to afford him a fair trial. The Defendant asserts that his charges should be vacated because of prejudice.
 

 Again, this issue is not properly before this Court. The Defendant’s convictions and sentences were affirmed in the Defendant’s previous appeal in which the Defendant could have, but failed to raise this issue.
 
 [14]
 

 
 *408
 

 Numbers 6-12, and 19—Trial Evidence
 

 In pro se assignments of error numbers six through twelve and nineteen, the Defendant claims that the trial judge erred in admitting certain evidence and allowing certain witnesses to testify, and that the evidence was insufficient to convict him of attempted simple burglary.
 

 Pro se assignments of error six through twelve and nineteen relate to the sufficiency of the evidence presented at trial. These issues are not properly before this Court since the Defendant’s convictions and sentences were affirmed in the Defendant’s previous appeal,
 
 State v. Woods,
 
 08-718 (La App. 5 Cir. 2/10/09), 4 So.Sd 248;
 
 State v. Gassenberger,
 
 02-658 (La.App. 5 Cir. 12/11/02), 836 So.2d 271. Thus, we decline to address these claims.
 

 Number 13—Sentences for Original Convictions
 

 In pro se assignment thirteen, the Defendant claims that the trial judge erred in ordering that the sentences for his convictions be consecutively served because Lithe charges were all part of the same act or transaction or constituted part of a common scheme or plan. In addition, the Defendant contends that the sentences were excessive, and the trial judge failed to adequately consider the guidelines in La.C.Cr.P. art. 894.1.
 

 Again, this assignment of error as it relates to the sentences for the convictions for possession of hydrocodone and possession of alprazolam is not properly before this Court because the Defendant’s convictions and sentences were affirmed in the Defendant’s previous appeal.
 
 See, State v. Gassenberger,
 
 02-658 (La.App. 5 Cir. 12/11/02), 886 So.2d 271.
 

 Furthermore, the trial judge vacated the Defendant’s original sentence for the attempted simple burglary of an inhabited dwelling conviction after the Defendant was found to be a fourth felony offender. Therefore, the argument related to the original sentence for this offense is moot.
 
 State v. Jackson,
 
 05-923, p. 13 (La.App. 5 Cir. 3/28/06), 926 So.2d 72, 79,
 
 writ denied,
 
 06-1589 (La.1/8/07), 948 So.2d 121;
 
 State v. Hanson,
 
 00-1168, p. 4 (La.App. 5 Cir. 12/13/00), 778 So.2d 43, 45.
 

 Thus, we find no merit to pro se assignment of error number 13.
 

 Numbers 14, 15, and 17—Habitual Offender Double Enhancement
 

 In pro se assignments 14, 15, and 17, the Defendant claims that he received a double enhancement following the trial judge’s finding that he is a fourth felony offender. He argues that the trial judge erred in allowing his firearm conviction, as well as the predicate felony conviction on which it was based, to both be used in finding him to be a fourth felony offender.
 

 The State argues that it presented evidence of seven of the Defendant’s prior felony convictions that could have been used to find him to be a fourth felony offender, including the possession of a firearm felony in case
 
 93-3600
 
 and the distribution of marijuana in case
 
 91-4415,
 
 the underlying felony used to enhance ^the Defendant’s firearm conviction. The State contends that it presented all of the Defendant’s seven prior convictions because they
 
 *409
 
 were relevant to the trial judge’s sentencing discretion in this case.
 

 In
 
 State v. Moten,
 
 619 So.2d 683, 685 (La.App. 4 Cir.1993), the court found that a felon in possession of a firearm conviction might be used to enhance the penalty for a subsequent conviction only if the underlying felony used as an element of the firearm conviction was not also used in the same multiple bill.
 

 In
 
 State v. Bailey,
 
 97-498, p. 9-10 (La.App. 5 Cir. 11/12/97), 708 So.2d 1325, 1331, on error patent review, this Court found, “[i]f a felon in possession of a firearm conviction is used to enhance a subsequent conviction, the underlying felony used as an element of the firearm conviction may not be used in the multiple bill, as this constitutes double enhancement.”
 

 In
 
 State v. Fletcher,
 
 01-809, (La.App. 5 Cir. 2/26/02), 811 So.2d 1010, this Court, citing
 
 Moten
 
 and
 
 Bailey,
 
 set aside the defendant’s determination as a third felony offender. In
 
 Fletcher,
 
 we found that because the defendant’s 1983 conviction for simple burglary was used as an element of the firearm conviction and the firearm conviction was used for enhancement purposes, the 1983 conviction for simple burglary could not be used in the habitual offender bill. We noted that the State could use the 1983 conviction for simple burglary, if it chose not to use the firearm conviction.
 
 Fletcher,
 
 01-809 at 7, 811 So.2d at 1013-14. We then entered a judgment finding the defendant to be a second felony offender and remanded the case to the trial court for resentencing.
 
 Fletcher,
 
 01-809 at 8, 811 So.2d at 1014.
 

 In the present case, the State used the distribution of marijuana conviction in case number
 
 91-4415
 
 as the predicate felony in case number
 
 93-3600,
 
 in order to obtain the firearm conviction. Both of these convictions are included in the Defendant’s habitual offender bill. Based upon
 
 Moten, Bailey,
 
 and
 
 Fletcher,
 
 the ^Defendant received a double enhancement. However, the State proved the Defendant’s status as a fourth felony offender independent of either of those predicate convictions, as we found in our previous discussion of the assignment of error presented by appellate counsel.
 

 Number 16
 
 — Counsel
 
 of Choice
 

 In pro se assignment 16, the Defendant claims that the trial court erred by depriving him of his choice of counsel at his habitual offender hearing. The Defendant claims that he told the trial judge that he had another lawyer representing him who was not present. According to the Defendant, the trial judge responded that “This State lawyer is here let him handle it.” The Defendant contends that the trial judge abused his authority by denying him his choice of counsel and forcing him to proceed with an attorney who was not prepared. The Defendant asserts that he was prejudiced by the lack of nominal representation from appointed counsel at the hearing.
 

 At the hearing, Calvin Fleming, the Defendant’s appointed attorney, informed the court that the Defendant had retained Dennis Dobear as his private counsel. The trial judge informed the Defendant that, nevertheless, he intended to conduct the hearing. The trial judge appeared to suggest that, if Dobear were present, he could present himself to the court in order to represent the Defendant. The Defendant informed the court that Dobear was unaware that the hearing was taking place because the hearing was previously postponed and Dobear did not receive a new court date. The trial judge stated that Dobear never informed the court that he was hired or retained by the Defendant and represented him. In addition, the trial judge noted that Dobear had never filed anything in the record or signed into the
 
 *410
 
 record. The trial judge stated that the only thing that he could assume was that Dobear did not represent the Defendant, since Dobear had not l^taken any of the steps that attorneys usually do when they are hired to represent someone.
 

 The Sixth Amendment to the United States Constitution provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.”
 
 State v. Reeves,
 
 06-2419, p. 35 (La.5/5/09), 11 So.3d 1031, 1055,
 
 cert. denied,
 
 — U.S.-, 130 S.Ct. 637, 175 L.Ed.2d 490 (2009). The Louisiana Supreme Court has found that it is both structural error requiring reversal and a violation of the Sixth Amendment when a criminal defendant has been denied his right to retained counsel of choice.
 
 Reeves,
 
 06-2419 at 36, 11 So.3d at 1056;
 
 United States v. Gonzalez-Lopez,
 
 548 U.S. 140, 148, 126 S.Ct. 2557, 2563, 165 L.Ed.2d 409 (2006). When the right to be assisted by counsel of choice is wrongly denied, no harmless error analysis is required regarding counsel’s effectiveness or prejudice to the defendant.
 
 Id.
 
 The Supreme Court stated:
 

 Deprivation of the right is “complete” when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice-which is the right to a particular lawyer regardless of comparative effectiveness-with the right to effective counsel-which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.
 

 State v. Reeves,
 
 06-2419 at 36, 11 So.3d at 1056;
 
 Gonzalez-Lopez,
 
 548 U.S. at 148, 126 S.Ct. at 2563.
 

 The Louisiana Constitution ensures similar rights to the assistance of counsel for a criminal defendant as those arising under the federal constitution.
 
 Reeves,
 
 06-2419 at 37, 11 So.3d at 1056. Generally, a person accused in a criminal trial has the right to counsel of his choice.
 
 Reeves,
 
 06-2419 at 37, 11 So.3d at 1057. An indigent defendant’s right to choose his defense counsel, however, only allows the defendant to retain the attorney of choice if the defendant 12scan manage to do so, but the right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice.
 
 Id.
 
 Furthermore, a defendant’s right to choose an attorney is a right to be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system.
 
 State v. Burbank,
 
 07-125, p. 7 (La.App. 5 Cir. 10/30/07), 971 So.2d 1173, 1178,
 
 writ denied,
 
 07-2287 (La.4/25/08), 978 So.2d 364. A defendant in a criminal trial cannot force a postponement by a last minute change of counsel.
 
 State v. Williams,
 
 00-1850, p. 4 (La.App. 5 Cir. 4/11/01), 786 So.2d 785, 790-91,
 
 writ denied,
 
 01-1432 (La.4/12/02), 812 So.2d 666.
 

 The record contains a minute entry dated April 25, 2008 showing that the habitual offender hearing was scheduled for June 23, 2008. At that time, the court-appointed attorney represented the Defendant. The hearing was rescheduled twice. There is nothing else in the record to show that the Defendant had retained private counsel. Furthermore, the habitual offender bill of information was filed on April 25, 2008, but the hearing was not held August 18, 2008, almost four mouths later. As noted by the trial judge, during that time there was no communications or filings in the record to indicate that the attorney represented the Defendant. Thus, we find that the trial court did not err in finding that Dobear did not represent the Defendant.
 

 
 *411
 

 Number 17
 
 — Excessive
 
 Sentence
 

 The Defendant contends that his sentence of life imprisonment with no parole is excessive. He also complains that the trial judge did not comply with the guidelines in La.C.Cr.P. art 894.1.
 

 The record indicates that the Defendant orally objected to his habitual offender sentence as excessive at the time of sentencing. He did not, however, raise the trial judge’s failure to comply with La. C.Cr.P. art. 894.1 at that time. In 12fiaddition, the Defendant did not make an oral motion for reconsideration of sentence, or file a written motion for reconsideration of sentence raising the lack of compliance with La.C.Cr.P. art. 894.1. Therefore, this issue was not preserved for appeal. La.C.Cr.P. art. 881.1 B; La. C.Cr.P. art. 881.1 E.
 

 Failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, merely limits a defendant to a bare review of the sentence for constitutional excessiveness.
 
 State v. Hills,
 
 03-716, p. 12 (La.App. 5 Cir. 12/9/03), 866 So.2d 278, 286,
 
 writ denied,
 
 04-1322 (La.4/22/05), 899 So.2d 569;
 
 State v. Fairley,
 
 02-168, p. 4 (La.App. 5 Cir. 6/26/02), 822 So.2d 812, 814.
 
 [15]
 
 Therefore, we reviewed the Defendant’s sentence for constitutional excessiveness, and found that the sentence is not excessive under these facts.
 

 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.
 
 State v. Crawford,
 
 05-494, p. 6 (La.App. 5 Cir. 1/31/06), 922 So.2d 666, 669. A sentence that is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering is unconstitutionally excessive, even if it is within the statutory limits.
 
 State v. Riche,
 
 608 So.2d 639, 640 (La.App. 5 Cir.1992),
 
 writ denied,
 
 613 So.2d 972 (La.1993). Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant.
 
 State v. Martin,
 
 28,489, p. 8 (La.App. 2 Cir. 8/21/96), 679 So.2d 557, 563,
 
 writ denied,
 
 96-2367 (La.2/7/97), 688 So.2d 498.
 

 A trial court should consider the defendant’s personal history such as age, family ties, marital status, health, employment record, as well as his prior criminal |27record, seriousness of offense and the likelihood of rehabilitation in determining an appropriate sentence.
 
 Crawford,
 
 05-494 at 6, 922 So.2d at 669. A trial court is afforded great discretion in determining sentences and sentences will not be set aside as excessive absent clear abuse of that broad discretion.
 
 Riche,
 
 608 So.2d at 640.
 

 In reviewing a sentence for ex-cessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice.
 
 Crawford,
 
 05-494 at 6, 922 So.2d at 669. The three factors that are considered in reviewing a trial court’s sentencing discretion are the nature of the crime, the nature and background of the offender, and the sentence
 
 *412
 
 imposed for similar crimes by the same court and other courts.
 
 Crawford,
 
 05-494 at 8, 922 So.2d at 670. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate.
 
 Crawford,
 
 05-494 at 8, 922 So.2d at 670-71. An “appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed.” La.C.Cr.P. art. 881.4(D).
 

 The term of imprisonment for a simple burglary of an inhabited dwelling conviction is “hard labor for not less than one year, without benefit of parole, probation or suspension of sentence, nor more than twelve years.” La. R.S. 14:62.2. Pursuant to La. R.S. 14:27, an attempt is punishable by a fine or imprisonment or both, “in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.” Therefore, the maximum sentence that the Defendant could have received for the attempted simple burglary conviction was six years at hard labor, with not less than six months being served without benefit of parole, probation or suspension of sentence. That is a period one-half of the longest term of imprisonment prescribed 12ftfbr the completed offense. See
 
 State v. Wilson,
 
 30,634, p. 8 (La.App. 2 Cir. 5/13/98), 714 So.2d 126, 131.
 

 The Defendant was found to be a fourth felony offender. La. R.S. 15:529.1(A)(l)(c)(i) provides:
 

 (c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
 

 (i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life;
 

 Because the underlying conviction of attempted simple burglary was punishable by a term of imprisonment less than the Defendant’s natural life, pursuant to La. R.S. 15:529.1(A)(l)(c)(i), the Defendant’s enhanced sentencing exposure was twenty years to life imprisonment.
 

 In
 
 State v. Ballay,
 
 99-906 (La.App. 5 Cir. 2/29/00), 757 So.2d 115,
 
 writ denied,
 
 00-0908 (La.4/20/01), 790 So.2d 13, the defendant was convicted of theft of goods between $100 and $500. The trial judge enhanced the defendant’s sentence to life in prison after he was found to be a fourth felony offender based on the facts of the case showing he was a career criminal. We affirmed the sentence, finding no abuse of the trial judge’s discretion due to the defendant’s extensive criminal record, citing jurisprudence in support.
 
 Ballay,
 
 99-906 at 30, 757 So.2d at 135.
 

 In the present case, the record reflects that the trial judge imposed the habitual offender sentence of life imprisonment without benefit of probation or suspension of sentence. Contrary to the Defendant’s claim, the Defendant’s habitual offender sentence did not restrict parole. The record reflects that the trial judge was aware of the nature of the crime for which the Defendant was convicted since he was the same judge who imposed the Defendant’s sentences on his | ^underlying convictions. In addition, the State produced evidence showing that the Defendant is a career criminal. As we noted in
 
 Ballay,
 
 recent jurisprudence supports the imposition of the maximum sentence under La. R.S. 15:529.1 when a defendant’s criminal record is extensive. The Defendant here has seven felony convictions. Thus, the Defendant’s extensive criminal record justifies imposition of the maximum sentence under
 
 *413-417
 
 La. R.S. 15:529.1(A)(l)(c)(i). Consequently, we find that the trial judge did not abuse his wide discretion in sentencing the Defendant to the maximum term.
 

 Number 18
 
 — Double
 
 Jeopardy
 

 The Defendant claims that he was placed in double jeopardy when he was sentenced as a habitual offender because he was punished for a second time for the same crimes. We find no merit to the claim.
 

 A habitual offender hearing is not a trial and, therefore, legal principles such as res judicata, double jeopardy and the right to a jury trial do not apply.
 
 State v. Dorthey,
 
 623 So.2d 1276, 1279 (La.1993);
 
 State v. Balser,
 
 96-443, p. 5 (La.App. 5 Cir. 11/14/96), 694 So.2d 351, 354;
 
 State v. Brown,
 
 98-938, p. 5 (La.App. 5 Cir. 3/10/99), 732 So.2d 566, 568 n. 3.
 

 ERROR PATENT
 

 The record was reviewed for errors patent, according to La.C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals no error patent requiring action by this Court.
 

 Accordingly, the habitual offender finding and sentence are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . In the appeal from the convictions, the Defendant only assigned as error the trial judge's denial of his motion to sever the charges for possession of hydrocodone and possession of alprazolam from the charge of simple burglary of an inhabited dwelling.
 

 [2]
 

 . The facts related to the offenses are included in the Defendant’s original appeal.
 
 See State v. Woods,
 
 08-718 at 3-6, 4 So.3d at 250-51
 

 [3]
 

 .
 
 Boykin v. Alabama,
 
 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
 

 [4]
 

 . This issue will be discussed later in this opinion in regard to the constitutionality of his pleas pursuant to
 
 Boykin v. Alabama,
 
 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969);
 
 State v. Shelton,
 
 621 So.2d 769 (La. 1993).
 

 [5]
 

 .The other pro se claims will be addressed later in this opinion.
 

 [6]
 

 . It is unclear to which item numbers the Defendant refers.
 

 [7]
 

 . It is unclear what the Defendant is alleging in this claim.
 

 [8]
 

 .In addition, the State must further show that the prior convictions fall within the ten-year cleansing period prescribed by La. R.S. 15:529.1(C). The Defendant does not claim any deficiency in proof as to the cleansing period.
 

 [9]
 

 . Recently, in
 
 State v. Balsano,
 
 09-735 (La.6/19/09), 11 So.3d 475, the Louisiana Supreme Court noted that for guilty pleas entered in Louisiana before December 8, 1971, and for all non-Louisiana guilty pleas used to enhance a defendant's sentence following a subsequent conviction, a defendant does not satisfy his burden of proof on collateral attack merely by presenting contemporaneous records revealing a violation of the three-right rule.
 
 Balsano,
 
 09-735 at 13, 11 So.3d at 482. The Court cited its decision in
 
 State v. Harris,
 
 97-1352, pp. 1-2 (La. 10/31/97), 702 So.2d 678, 679,
 
 writ denied,
 
 98-1949 (La.12/11/98), 729 So.2d 588, stating that the defendant must show that his guilty plea did not represent a knowing and voluntary choice among available alternatives.
 
 Balsano,
 
 09-735 at 13-14, 11 So.3d at 482.
 

 [10]
 

 . La.C.Cr.P. art. 921 states, "A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.”
 

 [11]
 

 .
 
 Guzman
 
 was distinguished with regard to cleansing periods in
 
 State v. Mosley,
 
 08-1319, p. 8 (La.App. 5 Cir. 5/26/09), 16 So.3d 398, 403.
 

 [12]
 

 . In the present case, the Defendant’s predicate convictions in 1996, 1993, 1992, 1991, and 1987 occurred prior to the enactment of La.C.Cr.P. art. 556.1 in 1997. The remaining predicate conviction occurred in 2005.
 

 [13]
 

 . In addition, the waiver forms in predicate cases indicate that the defendant was informed of the maximum sentence that he could receive.
 

 [14]
 

 . We note that a claim for ineffective assistance of counsel could be addressed on appeal, but it is more appropriately addressed through an application for post-conviction relief filed in the trial court where a full eviden-tiary hearing can be conducted when the rec
 
 *408
 
 ord does not contain sufficient evidence to fully explore an ineffective counsel claim.
 
 State v. Taylor,
 
 04-346, p. 10 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595. See La. C.Cr.P. arts. 924-930.8. Furthermore, even if this issue was properly before the Court, the record does not contain sufficient evidence to rule on the merits of the claim, especially since the trial judge recognized trial counsel's preparedness and knowledge. Therefore, the Defendant's claim should be addressed through an application for post-conviction relief filed in the trial court.
 

 [15]
 

 . See also,
 
 State v. Franklin,
 
 94-409, pp. 14-15 (La.App. 5 Cir. 12/14/94), 648 So.2d 962, 969,
 
 writ denied,
 
 95-143 (La.5/19/95), 654 So.2d 1354, in which this Court found that the defendant was precluded under La. C.Cr.P. art. 881.1 from raising a claim of excessiveness regarding his habitual offender sentence on appeal because he failed to file a motion to reconsider sentence.